UNITES STATES DISTRICT COURT
NEW YORK SOUTHERN DISTRICT

----------------------------------------------------------------x

PHILIPPE BUHANNIC ,
~~Individually and derivatively on behalf of Trading-Screen Inc.,~~

              Judge:

        Petitioners,

    -against-           <u>Index No</u>: **19cv2915**

TRADINGSCREEN INC.; ~~PIERRE SCHROEDER;~~
~~PIERO GRANDI; FRANK PLACENTI; ROBERT~~
~~TRUDEAU; TCV VI, L.P., AND TCV MEMBER~~
~~FUND, L.P.,~~

        Respondent,

----------------------------------------------------------------x

<u>**AFFIDAVIT IN SUPPORT OF PLAINTIFFS' MOTION
FOR THE WRITTEN CONSENT CHANGING THE REPRESENTANT OF
THE COMMON SHAREHOLDERS AND PROPOSING CANDIDATES
FOR INDEPENDENT MEMBERS OF THE BOARD**</u>

## STATEMENT

Philippe Buhannic, being duly sworn, deposes and says:

1. I am a co-plaintiff in this matter. I am a foreign citizen with a French nationality and a swiss resident, and the conflict is about hundreds of Millions of USD of value unduly stolen and therefore the diversity exception clearly put this into the hands of the Federal Court system ( <u>United States Constitution</u>, in <u>Article III, § 2</u>, <u>28 U.S.C. § 1332</u>).

2. I make this affidavit in support of this motion for an order to resolve some of the most dangerous lack of governance I have experienced in a company in 38 years in the business and stop a clear infringement on the rights of shareholders to be represented by the right people in the right way as defined by the corporate documents. The situation has been like this for two years now, given the lack of decision of the State Court on the issue of cause, and the company and its crooked management have embarked on a path to destruction, destroying an immense amount of value (more than 300 M USD), but also allowing a farce of a governance system to become standard with all the decisions being taken by a conflicted executive committee excluding the majority owners, instead of the Board, by creating a compensation committee being populated only with TCV when they represent only 18% of the shareholding and conflicted individuals that they corrupted to change camp, and a refusal to constitute the Board fully against

the organizational documents of the company in order for TCV, the instigator of

the coup, all this to retain an absolute illegal control of the company I created.

3.  I believe the Federal Court should grant this motion because the logic, the law and

the economics are all aligned and demonstrate that, outside of the expensive

lawyering and delaying tactics of the Defendants, the Defendants have wrecked the

company and abused its assets in a disastrous way as demonstrated in the exhibits.

The preliminary injunction order would allow a swift implementation and a Board

that is finally representative of the shareholding, to be constituted. This will protect

the company against the organized corporate theft practiced by the two rogue

Board members and their ally TCV.

4.  I have been trying to maintain some form of decent governance in the company

over the last two years but given the total lack of response on our books and

records demands to get information we are entitled to, to elect Board members

based on our majority but having been manipulated against by a mixture of bad

lawyering and court arbitrage, and the absence of decision on the cause for two

years, the company need desperately a governance that is what all parties had

agreed for. Today TCV with 18% of the shareholding controls with the help of the

two rogue Board members, the Board for which control they paid them

handsomely, and the compensation committee. This situation is unacceptable and a

direct consequence of the lack of decision in this case. The company being in

virtual bankruptcy and decision that are touching its core with the sale of core assets and the organized theft of assets organized by the two rogue Board members unimpeded by anything, as we cannot even get the basic information through books and records demands on these deals despite being the majority shareholder is just dramatic.

5. The last Board was another masquerade of governance: first we did not have one since October because the decisions are taken at an executive committee where no represent of 70% of the capital is, where the recording is one sided to control the minutes and we are refused a copy, where the decisions are forced through the illegally acquired majority and where we are systematically prohibited to speak. And this for two years with no action from the Court. Again, decisions where the two rogue Board members that are common thieves, steal assets for themselves while we are incapable of stopping by lack of decision on the core issue and multiple stays. This motion proposes to address some of the governance issues that are unacceptable in any jurisdiction, unresolved now for two years and will allow the company to move forward and build on to recover some governance at least, while waiting for the urgent decision needed on the cause. These proposals are common sense, rooted in the law and the corporate documents that all parties agreed to and should be obvious steps that a decent management would take naturally. But given the level of corruption of the Board there is no hope for that to

happen without the intervention of the Court.

6. As explained in depth, if the Court does not act quickly there will be nothing to rule upon and the level of urgency is extremely high given the disastrous management of the company and the profligate spending on ridiculous things, mostly profiteering, by management. This order is a complement of the other request we have made for books and records, as the company has hidden key information from the Board, and logically organized with it. It is not our intention to bury the Court in proceeding but the level of gravity of the situation and the incredible deterioration of the governance impose to us this motion to discharge ourselves of our fiduciary duties as Board members. The farce we saw at the last Board has to stop, where completely interested Board members take life or death decisions on businesses they don't even understand and have inherited from sixteen years of our hard work, and only through deeply illegal manipulation as we have informed the Court and prohibit us to even speak at the Board or to get relevant information. We have launched in Switzerland where that facts happened a criminal procedure against Piero Grandi as he has abused, please see the exhibits, corporate assets of the company by employing employees of his personal restaurant but paying them on the TradingScreen payroll for inexistent work or presence.

7. The double standard of investigation that has been applied by the TCV controlled

Board between the fake, created incident in the case of Mr. Buhannic and the complete absence of even basic investigation for the criminal acts perpetrated by Piero Grandi despite an 80% majority for this investigation as most Series D were in favor of it, clearly set the stage of where we are in governance at Tradingscreen where everybody on the majority of the seats at the Board is completely conflicted as they are all effectively stealing assets, or trying to while they can, from the two rogue Board members to TCV. The Court should allow a reestablishment of the governance in order for the company to be managed as it was planned by the corporate documents, heavily negotiated by all parties and that TCV has voluntarily refused to apply to keep the illegal control they have on the company. The Court should severely punish this conduct and take the decision rapidly not to allow the corrupt members to win by attrition.

8. These decisions are common sense and are just a solid application of the agreements and bylaws of the company under Delaware law. Nobody can dispute their validity, the fact that they apply to all parties and that they are fair and reasonable. We hope that the Court will put an end to the TCV practices, that look more like from the 1930 Chicago before the FBI came in to clean up the place. Having worked in Finance for 38 years I have never experimented such a level of outright corruption, malfeasance and court inaction front of a grave danger, the disappearance of the company. It makes me sick to see the work of my ingenuity

and hard work being destroyed with no recourse or help from the justice system that so far has been more interested in lawyering than resolving the simple issues at stake.

9. As explained in the written consent none of the decisions on stocks have been taken legally since June 2016 as either the compensation committee was deficient for the allocation of restricted stocks to the two corrupt rogue Board members as the largest constituency the Common shareholders were not represented and the interested independent could not participate. Therefore it was a decision taken by 18% of the shareholding TCV in a clear breach with the company organizational charter. The employee allocation was also deficient as there was no creation of value but in reverse a complete disaster on the result side as the company bleed cash and therefore these allocations were there only to buy employees but breach the concept of the incentive plan which is based on demonstrated results making them illegal too. The Board being illegal also it was not a valid forum to validate the allocations or any other important decision.

10. Therefore the stock count must be made at the date of May 2016. At this date there was as shown in Exhibit # 1 a very clear majority for Mr. Buhannic of the common stocks making him the majority common shareholder at more than 60%. Further the New York court in its preliminary injunction, the only thing the court has really done in 3 years, has prohibited the new management to dilute Mr. Buhannic below

the majority of the shareholding, therefore also the majority of the Common stocks. There is therefore a certainty on Mr. Buhannic still having today the majority of the total stock count and of the Common stocks. As shown in Exhibit # ! the tables are showing the massive control Mr. Buhannic have over the common shareholding allowing him to obtain this written consent as the majority shareholder. There is no doubt that Mr. Buhannic has the full majority of the Common stocks and even with the manipulation of the corrupt Board member to dilute him given on top the preliminary injunction. Therefore he is entitled to have this written consent effective. Therefore also in line with the Delaware law and at the Federal court because of the real Diversity of the case we are asking our written agreement to be declared valid by the court and the changes recommended ordered immediately with no delay to put back some corporate governance in the mess created by TCV. The rights of the shareholders to do that under Delaware law is absolute and definitive.

11. The illegal Board has approached the illegal Board to validate a transaction where SGX the exchange of Singapore would invest into a subsidiary of TradingScreen, BideFx. This transaction should not be authorized until the merits are established and the control of the company is validated. Worse this supposed subsidiary has been created for the sole purpose of stealing all the ASSETS of the Foreign Exchange division of TradingScreen for the benefit of a rogue board member and

his accomplice and authorizing this transaction would validate the outright theft of assets that has been committed because of the inaction of the courts over the last three years on very easy subjects and their entertaining of the delaying tactics of the corrupt law firms Morgan Lewis and Weil Gotschal. A total shame to the American legal system. The Plaintiffs have a clear right of information as they are Board members and in Delaware corporate law this right is very strong, and because they are the 70% of the company currently controlled by 18% of the shareholding. Despite two information demands in Delaware, two in New York and one in Federal court the Plaintiffs have been deprived of the critical information they requested and in particular the cap table post asset theft of the two companies BideFX and Quo systems. Still to this day no information has been communicated to them in clear breach of the disclosure rules under Delaware law. Now the same thieves are asking to open the capital to a third party after having stolen the assets that belong to TradingScreen shareholders and cannot even have this information? What kind of court could cover such a breach in basic corporate governance? It is essential before any corporate action takes place to have ascertain the ownership and the validity of the control currently in place. This is why it is essential for the written consent to be effective immediately and for this court to prohibit any corporate actions that could hurt the Common shareholders to happen as it would otherwise be too late and the theft would have been validated with no

information, no corporate governance and a complete check written to the thieves to do whatever they want despite being a minuscule shareholder. To make the matter worse. These transfers of assets were not properly authorized ay way as they need a validation by the general assembly and no such assembly as yet another breach to corporate governance has taken place as the thieves know they will lose power since they took illegally the power in 2016 where the company had one very year before for 16 years! These asset thefts are falling under the Sarbanes Oxley security rules that are Federal by statute and constitute on top of wire fraud and mail fraud associated to it criminal acts committed by the rogue Board members and TCV. Finally it is important to understand that the Board is not properly constituted and is illegal as the representant of the Common shareholders will be there after the written consent and TCV has blocked to keep control for 8 years now the election of the second independent and we have included this point into the written consent to equip the company finally with an effective Board. We have given in Exhibit # 2 the list and the details of the great candidates we have lined up for the Series D to decide and reconstitute an efficient, non-criminal, non-interested Board. We had requested a fast decision on this independent position but after months and soon a year we have still to even get an answer. This is a major weakness of the corporate governance of TradingScreen and allows TCV to continue its illegal control with 18% of shareholding.

12. A prior application has not been made to this Court for the relief now requested.

**WHEREFORE,** I respectfully request that this motion be granted and that I have such other and further reliefs as may be just and proper.

Sworn to before me this
_2_ day of December 2017. *April - 2019*　　　　Philippe Buhannic

_____
Notary Public

CHEN, YUAN HE
Notary Public, State of New York
No. 01CH6012510
Qualified in New York County
Commission Expires Aug. 31, 20 22

# WRITTEN CONSENT
# OF HOLDERS OF THE MAJORITY OF COMMON STOCK
# OF TRADINGSCREEN INC.
### April 2 , 2019

The undersigned, Philippe Buhannic, in his capacity as holders and/or true and lawful attorney and irrevocable proxy for the holders of a majority of shares of common stock, par value $0.01 per share (the "Common Stock") of TradingScreen Inc., a Delaware corporation (the "Company") set forth on Schedule A hereto, acting by written consent (this "Written Consent") in lieu of meeting as permitted by section 228 of the General Corporation Law of the State of Delaware (the "DGCL"), do hereby consent to the adoption of the following resolutions in lieu of meeting:

## I.    The Dispute

*Termination of Philippe Buhannic as Chief Executive Officer of the Company*

**WHEREAS,** the Company issued a letter to Bruce E. Jameson, counsel for Philippe Buhannic, on June 28, 2016 informing him that the Board (as defined below) had illegally terminated Philippe Buhannic's employment (the "Termination"); and

**WHEREAS,** the circumstances surrounding the Termination are currently part of the Amended Complaint (the "Amended Complaint") of Philippe Buhannic against the Company and the other parties thereto before Justice Marcy Friedman in the Supreme Court of the State of New York, who has already said that the termination was not proper, and is as well at the federal court Southern district for matters that are Federal in nature (the "Dispute") wherein the plaintiffs assert that the Termination was not for cause. Furthermore that the current Board had vested in 2017 all the Restricted stocks with no exception for Philippe Buhannic stocks and therefore the Restricted Stocks (as defined below) are fully vested allowing Philippe Buhannic to vote such Restricted Stock notwithstanding the Company's contention that the Termination was for cause; and there is no Board decision on rescinding the stocks where it is necessary for all legal cancellation of awards and the current Board is illegal any way as in Del.C paragraph 242(a) and

**WHEREAS,** a preliminary injunction in connection with the Dispute has been ordered which "holds that the plaintiffs make a sufficient showing on this record of a likelihood of success on the merits of their claim that Philippe's termination was not for cause under the terms of" (the "Merits") the Employment Agreement between Philippe Buhannic and the Company, dated September 11, 2007; This preliminary injunction also prohibits the temporary management to dilute Philippe Buhannic below a majority of the common stocks. Therefore it is clear and certain that Philippe Buhannic is carrying the majority of the common stocks and of the overall stock count as the Defendants were prohibited by the preliminary order to dilute Philippe Buhannic below 50%.. Further the amended complaint presents a number of issues that are exclusively Federal, and the New York state court does not have jurisdiction on these matters any way and

**WHEREAS,** the Company is currently in total crisis having lost most clients and turnover

and facing a desperate financial situation that is deteriorating rapidly, due to the total incompetence who has made outright theft the main management tool,. With especially negative impact for the common shareholders as their stocks have lost all value. While Philippe Buhannic and had desired to wait for any significant corporate action until the outcome of the Dispute to take many of the actions set forth in this Written Consent, Philippe Buhannic, based on his good faith belief that he will prevail in the Dispute on the Merits in all respects, have no choice given the no action of the courts but to act on the date hereof by this Written Consent to protect the interests of the holders of the Common Stock against the corrupt, partial and interested board of directors of the Company (the "Board") that has committed multiple criminal acts to insure its illegal control of the company; and

**WHEREAS,** the corrupt, partial and interested Board members have illegally stolen the assets of the company in Foreign Exchange and Wealth Management and put them into two new companies BideFX and Quo systems with the clear intent to steal these assets form the common shareholders. They have despite 4 requests in Delaware court, New York court and Federal court refused the information rights on the cap table of these subsidiaries for more than two years. They are now trying illegally to monetize these assets through a partial sale. The sale of the assets was not authorized by the shareholders and especially the common shareholders in an annual assembly as the Corrupt Board members have not held a general assembly as they control only 18% of the shareholding since 2016, in an unacceptable governance breach as the company since inception had one every year. These strategic corporate sales affecting the shareholders deeply in their ownership required a vote of all shareholders and not only the corrupt Board.

**WHEREAS,** the allocations of restricted stocks have all been done illegally since June 2016, the allocation of stocks to the Board members not having been passed through a regularly composed Compensation committee and the allocation to the employees granted without a legally elected Board and to buy the employees despite a disastrous performance in a clear breach of the incentive plan construct. None of these decisions have been submitted and approved by a general assembly which has not been organized since the illegal take over in June 2016 and are therefore invalid and unauthorized. As in all cases like Grimes v. Alteon, Inc. 804 A 2d. 256 (Del 202), STARR Surgical Co. v. Waggoner 586 A 2d. 1140 (Del 1991), Libermann v. Frangiosa 844 A. 2d 992 (Del 2002) or nguyen v. View Inc. 2017 WL 2439074 (Del2017), stocks that have been issued without proper authority are invalid and void.

## II.  Basis for Asserting Majority of the Common Stock

*Proxies*

**WHEREAS,** Philippe Buhannic has received signed proxies from the parties and for the number of shares of Common Stock set forth on Schedule A (the "Proxies") which provide Philippe Buhannic the right to vote such shares of Common Stock for the election of directors on the Board; and

**WHEREAS,** based on the capitalization table of the Company dated May 10, 2016, the Company has 11,753,774 shares of Common Stock issued and outstanding, and (i) including all Common Stock held by Philip Buhannic (including (a) 4,540,301 shares of the restricted Common Stock that were purchased in cash every year at a level equivalent to 25% of his bonus

at market value along his employment contract in 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015 and 2016, or (b) 393,875 shares of restricted Common Stock which were acquired by Philippe Buhannic pursuant to exercise of stock options and grants in 2005, 2006 and 2007) and (ii) the Common Stock represented by the Proxies, this Written Consent is with respect to 7,957,682 shares of Common Stock, which represents 67.70% of the Company's Common Stock, and is a majority of the outstanding shares of Common Stock;

**WHEREAS,** the May 2016 Capitalization Table is therefore the sole, valid capitalization table of the Company before being heavily manipulated until at least such time as the Dispute is resolved; and the fundamentals like the firing for cause and the rescinding of the stocks are fully decided as they are illegal today. In the meantime the May 2016 Capitalization Table applies along the law and rules of Delaware.

**WHEREAS,** Piero Grandi and Pierre Schroeder may not vote the Common Stock issued to them on or about June 2016 (the "Invalid Stock Issuances"), as they were issued improperly and are therefore as shown in the case law mentioned before void and invalid. They were issued in bad faith solely for the purpose of diluting Philippe Buhannic and Patrick Buhannic's ownership of the Company below a majority, and the validity of such issuances are the subjects of the Twelfth and Thirteenth Causes of Action in the Amended Complaint.

**NOW, THEREFORE, BE IT RESOLVED,** that the undersigned, representing clearly a majority of the Common Stock acting in the best interests of the Company's stockholders, hereby declare and direct that the Invalid Stock Issuances be voided by the Company with immediate effect and such voidance be reflected in the books and records of the Company.

### III.   Basis for Election of Three Common Stock Directors and Nominations for Two Independent Directors to the Board by this Written Consent

*Voting Agreement*

**WHEREAS,** pursuant to Section 2 of the Common Stockholders Voting Agreement dated as of December 4, 2008, by and among the Company and each of the holders of shares of Common Stock and restricted shares of Common Stock signatory thereto (as amended, the "Voting Agreement"), each of the stockholders who is a party thereto has agreed, whether at an annual meeting of stockholders or by action by written consent, to vote all of such stockholder's Shares (as that term is defined in the Stockholders Agreement (defined below)) of Common Stock in connection with the election of directors on the Board in such manner as directed by the holders of a majority of the outstanding Shares of Common Stock; and

**WHEREAS,** the parties to the Voting Agreement further agreed, pursuant to Section 3 of the Voting Agreement, to appoint and constitute Philippe Buhannic (the "Common Stockholder Representative") as each such stockholder's true and lawful attorney and irrevocable proxy, to the full extent of such stockholder's rights with respect to such stockholder's Shares of Common Stock, to vote all of such stockholder's Shares in the manner set forth in Section 2 of the Voting Agreement; and

3

**WHEREAS,** as set forth in the foregoing recital, Philippe Buhannic is authorized to vote the majority of the outstanding Shares of Common Stock in connection with the election of directors on the Board; and

*Stockholders Agreement*

**WHEREAS,** pursuant to Section 7.2 of the Stockholders Agreement of the Company dated as of September 11, 2007 (the "Stockholders Agreement") by and among the Company and the holders of the Company's Series D Convertible Preferred Stock, par value $0.01 per share (the "Preferred Stock"), and the holders of Common Stock signatory thereto, the Stockholders (as such term is defined in the Stockholders Agreement) have agreed that at any time at which stockholders of the Company will have the right to or will vote shares of capital stock of the Company or consent in writing to the election of directors, the Stockholders shall vote all Shares presently owned or hereafter acquired by them to cause and maintain the election to the Board the persons designated pursuant to Section 7.2(a), (b) and (c) of the Stockholders Agreement, and the Company agreed that the Company shall cause the nomination of such individuals for election to the Board; and

*Designation of Three Representatives to the Board by Holders of a Majority of the Common Stock under Stockholders Agreement*

**WHEREAS,** pursuant to Section 7.2(b) of the Stockholders Agreement, the holders of a majority of the Common Stock, are entitled to elect three (3) directors (the "Common Stock Directors") to the Board, one of whom shall be the Chief Executive Officer of the Company (the "CEO"); and

**WHEREAS,** Philippe Buhannic, Pierre Schroeder and Patrick Buhannic each currently serves as a Common Stock Director on the Board at the request of the holders of a majority of the Common Stock and the holders of a majority of the Common Stock now wish to elect three (3) new Common Stock Directors until their respective successors are duly elected and qualified; and

*Designation of Two Independent Representatives to the Board by Holders of a Majority of the Common Stock*

**WHEREAS,** Section 7.2(b) of the Stockholders Agreement provides that the Board shall consist of seven (7) directors, two (2) of whom shall be independent, non-employee representatives nominated by the holders of a majority of the Common Stock, and subject to the approval of the holders of a majority of the Preferred Stock ("Independent Directors"); and

**WHEREAS,** on July 11, 2017, the Common Stockholder Representative again sent a letter to Mr. Robert W. Trudeau of Technology Crossover Ventures (the "Preferred Stockholder"), as representative of the holders of a majority of the Preferred Stock, nominating three (3) qualified Independent Director candidates (the "Candidates") to the Board; and

**WHEREAS,** Patrick Buhannic has decided to step down from the Board due to personal obligations on the condition that his brother, Luc Buhannic, replace him as a Common Stock Director, and

4

**WHEREAS,** based on the foregoing recitals, the undersigned, representing a majority of the outstanding Common Stock have directed each of the stockholders who is a party to the Voting Agreement to vote all of such stockholder's Shares, whether at an annual meeting of stockholders or by action by written consent in lieu of meeting, for the (i) election of Philippe Buhannic, Luc Buhannic, and Olivier Lavedrine  to the Board as Common Stock Directors, (ii) removal of Pierre Schroeder from the Board and as CEO, (iii) designation of Philippe Buhannic as CEO and Chairman of the Board, and (iv) presentation of the Candidates and Additional Candidates (as defined below) to the Board.

*Common Stock Directors*

**NOW, THEREFORE, BE IT RESOLVED,** that the resignation of Patrick Buhannic as a Common Stock Director is hereby accepted, and it is

**FURTHER RESOLVED,** that Pierre Schroeder  hereby is removed as a Common Stock Director on the Board and Pierre Schroeder is further removed as CEO of the Company; and it is

**FURTHER RESOLVED,** that in accordance with Section 7.2(b) of the Stockholders Agreement Philippe Buhannic, Luc Buhannic, and Olivier Lavedrine be, and they hereby are, elected as the Common Stock Directors on the Board until they are reelected, or their successors have been duly elected and qualified; and it is

**FURTHER RESOLVED,** that Philippe Buhannic be, and he hereby is, designated as the CEO of the Company and Chairman of the Board until such time as he is reappointed, or his successor is duly appointed.

*Independent Directors*

**WHEREAS,** the Common Stockholder Representative noted that the term for the current Independent Director, Piero Grandi, has ended and thus he can no longer serve as an Independent Director and his position is vacant as of the date hereof; and

**WHEREAS,** by letter sent by email on April 2, 2019 to the Preferred Stockholder, Philippe Buhannic has nominated three (3) qualified prospective Independent Directors, in order to fill the vacancy on the Board caused by the end of Piero Grandi's term as well as the second independent Board member position which is currently open; and

**WHERAS,** the Preferred Stockholder has not acted in good faith to interview and/or approve any of the Candidates and Additional Candidates nominated as Independent Directors despite the best efforts of the Common Stock Representative;

**NOW, THEREFORE, BE IT RESOLVED,** that should Piero Grandi refuse to accept the end of his term on the Board and assert that he remains an Independent Director, the holders of a majority of the outstanding Common Stock hereby consent that Piero Grandi shall be, and he hereby is, removed for cause from the Board as an Independent Director effective immediately due

to his consistent bias against Philippe Buhannic, his criminal activities in particular his abuse of corporate assets that has been brought front of the Federal court under the Sarbanes Oxley regulation and other violations which have been communicated to the Board on numerous occasions including by the Grandi Letter; and it is further

RESOLVED, that the Candidates and the Additional Candidates be, and there hereby are, nominated as Independent Directors and the Preferred Stockholder is hereby directed to approve Scott Freeman and one (1) of the other Additional Candidates immediately as Independent Directors to serve on the Board until their successors have been duly elected and qualified; and it is further

RESOLVED, that if this Written Consent is not accepted by the Company as a valid action of the Company's stockholders, Philippe Buhannic, in his capacity as a director on the Board, shall call an annual meeting (the "Annual Meeting") of the Company's stockholders pursuant to Section 211(c) of the DGCL within sixty (60) days, at which the majority of the Common Stock represented and entitled to vote at such annual meeting will undoubtedly resolve to accept the resolutions contained in this Written Consent, and request an Inspector of Elections (e.g. an accounting firm but excluding the corrupt CBIZ and the corrupt Morgan Lewis law firm from any part of the process as they have colluded with the Defendants to hijack the company and have committed numerous criminal acts) to be at the Annual Meeting to tabulate the vote count and results and perform the other duties specified in Section 231 of the DGCL; as in many cases like Flaa v. Monteno, 2014 WL 2212019 (Del 2014) or portnoy v. Cyro-Cell Int'l Inc. 940 A 2d 43 (Del 2008) and it is further

RESOLVED, that the Board is hereby put on notice that given the Merits, when Philippe Buhannic prevail in the Dispute, this Written Consent shall be ratified in all respects by the Company with retroactive effect, and the Board is directed to notify applicable third parties who may be entering into business transactions with the Company of the existence of this Written Consent and the consequences that such Written Consent has on the Board, governance and decision-making of the Company.

RESOLVED, that the existing illegal Board is hereby put on notice that it cannot take any corporate action of any kind that would have an impact on the rights, value or any other aspect of the common stocks anymore and is given a week to resign or be sued for refusal of applying the law and the corporate governance of the company to further their personal interests in a clear breach of their fiduciary responsibility as board members to apply the decision of the shareholders. In particular all asset sales to any third-party company not owned 100% by the TradingScreen group that happened after June 2016 is canceled immediately and definitively and in particular the asset gift to Quo systems and BIDEFX as well as the transaction unauthorized with SGX for the termination of the contract signed in 2014 and the investment in BideFX.

IV.    **General Authorization**

RESOLVED that, in connection with or to carry out the actions contemplated by the foregoing resolutions, the Company, the CEO, or duly authorized signatory of the Company (any such person being an "Authorized Signatory") be, and such persons authorized by any of them be,

and each hereby is, authorized, in the name and on behalf of the Company to take such further actions or make such decisions as the Company, the CEO or such duly authorized other person shall deem necessary or appropriate, including to do and perform (or cause to be done and performed), in the name and on behalf of the Company, all such acts and to sign, make, execute, deliver, issue or file (or caused to be signed, made, executed, delivered, issued or flied) with any person including any governmental authority or agency, all such agreements, documents, instruments, certificates, consents or waivers and to make, or cause to be made, all such payments, as any of them may deem necessary or advisable in order to carry out the intent of the foregoing resolutions, the authority for the doing of any such acts and things and the signing, making, execution, delivery, issuance and filing of the foregoing to be conclusively evidenced thereby; and it is further

**RESOLVED,** that any and all actions of the Company or Authorized Signatory, taken in connection with the actions contemplated by the foregoing resolutions prior to the execution hereof be, and they hereby are, ratified, confirmed, approved and adopted in all respects as fully as if such action(s) had been presented to the Board for approval and approved by, the Board prior to such action being taken; and it is further

**RESOLVED,** that the Secretary of the Company is directed to file a signed copy of this written consent in the minute book of the Company.

[Signature Page Follows]

The undersigned has duly executed this written consent, effective this __ day of April 2019.

**COMMON STOCKHOLDERS:**

By: _____
Name: Phillipe Buhannic,
        As lawful attorney and proxy for each
        Common Stockholder signatory to the
        Voting Agreement as set forth on
        Schedule A

By: _____
Name: Patrick Buhannic

By: _____
Name: Philippe Buhannic

NDPB VENTURES S.A.

By: _____
Name: Philippe Buhannic

**PROXIES**

Latifat Afonja

Pete Te Strake

Nathan Walker

Diane Donaldson

Chris Flipo

By:
Name: Philippe Buhannic,
        As lawful attorney and proxy by virtue
        of executed proxies as set forth on
        Schedule A

## **SCHEDULE A**

Shares of Common Stock Included in This Written Consent

| Stockholder | # Shares Common Stock |
|---|---|
| | |
| NDPB Ventures S.A. | 2,353,497 |
| Patrick Buhannic | 444,700 |
| Philippe Buhannic | 4,599,354 |
| | |
| | |
| *Proxies* | |
| Latifat Afonja | 21,494 |
| Pete Te Strake | 136,740 |
| Nathan Walker | 36,374 |
| Diane Donaldson | 15,000 |
| Chris Flipo | |
| | |
| **Total:** | 7,607,159 |

# Exhibit 1

**Summary for Court**

| Common Stocks | Voting Stocks | % Common | Mr. Buhannic Block | | |
|---|---|---|---|---|---|
| **Founders** | 9,407,973 | 80.04% | **Mr. Buhannic Block** | | |
| | | | | | |
| NDPB | 2,353,497 | 20.02% | NDPB | 2,353,497 | |
| Buhannic, Philippe | 4,934,176 | 41.98% | Buhannic, Philippe | 4,934,176 | |
| Ahearn, Joseph | 1,675,600 | 14.26% | Buhannic, Patrick | 444,700 | |
| Buhannic, Patrick | 444,700 | 3.78% | Proxies | 225,309 | |
| | | | | | |
| **Employees and Outsiders** | 2,097,184 | 17.84% | **Total** | **7,957,682** | 67.70% |
| | | | | | |
| Total Employees | 2,097,184 | 17.84% | | | |
| | | | **Total % on Common stocks** | **7,957,682** | **67.70%** |
| **Outsiders** | 248,617 | 2.12% | | | |
| | | | | | |
| Total Outsiders | 248,617 | 2.12% | | | |
| | | | | | |
| **Total Common Stocks** | 11,753,774 | 100.00% | | | |

**Allocation at Market price for Philippe Buhannic's Shares**

| Grant | Share Price | Total Grant | Total Bonus | Equity (25%) | Cash (75%) |
|---|---|---|---|---|---|
| 2005 grant | | 13,875 | | | |
| 2006 grant | | 80,000 | | | |
| 2007 Grant | | 300,000 | | | |
| 2007's bonus grant | | 13,606 | | | |
| 2008's bonus grant | | 18,456 | | | |
| 2009's bonus grant | | 20,900 | | | |
| 2010's bonus grant | | 16,801 | | | |
| 2011's bonus grant | | 22,781 | | | |
| 2012's bonus grant | 3.33 | 67,264 | 895,952 | 223,988 | 671,964 |
| 2013's bonus grant | 0.10 | 937,500 | 375,000 | 93,750 | 281,250 |
| 2014's bonus grant | 0.10 | 1,631,770 | 652,709 | 163,177 | 489,632 |
| 2015's bonus grant | 0.10 | 1,141,680 | 456,633 | 114,158 | 342,475 |
| 2016's bonus grant | 0.14 | 669,643 | 375,000 | 93,750 | 281,250 |
| | | 4,934,176 | | | |

**Employees**

| | |
|---|---:|
| Afonja, Latifat | 24,251 |
| Andretta, Riccardo | 14,701 |
| Andrews, Jonathan | 186,753 |
| Barrett., Simon | 0 |
| Berglund, Martin | 20,000 |
| Bhalekar, Sameer | 0 |
| Boti, Aicha | 0 |
| Caggiano, Dana | 0 |
| Candaten, Matteo | 10,000 |
| Caraceni, Edmund | 14,701 |
| Cezard, Elie | 9,800 |
| Chan., Jeffrey | 0 |
| Chan.., Danny | 0 |
| Cortina, Fabien | 0 |
| Cozzolino, Aniello | 0 |
| Dolan, Cristina | 0 |
| Donohoe, Christopher | 12,251 |
| Dweck, Alan | 17,151 |
| Enright, Elaine | 0 |
| Erst, Brian | 12,251 |
| Finker, Leonid | 12,251 |
| Flipo, Christopher | 0 |
| Golberg | 0 |
| Grandi, Piero | 0 |
| Hashimoto, Haruo | 0 |
| Held, kevin | 0 |
| Ho, Bernard | 199,154 |
| Hollands, Chris | 0 |
| Huaping,Deng | 27,025 |
| Joshi, Sachin | 23,418 |
| Kamath, Gautham | 22,121 |
| Kilroy, Andrew | 14,701 |
| Kingsbury, Chris | 308,870 |
| Konneh, Suleiman | 0 |
| Kour, Gursikh | 0 |
| Luk, Florence | 20,418 |
| Limouzi, Quentin | 70,000 |
| Luk, Wilson | 0 |
| Lum, Hui Jing Barbara | 0 |
| Madison, David | 0 |
| Male, Jean-Philippe | 126,589 |
| McCann, Mark | 182,312 |
| Meissner, Curtis | 0 |
| Middleton, Stephen | 19,601 |
| Nadzan, Brian | 167,493 |
| Niccolini, Ludovico | 0 |
| Nobili, Luca | 0 |
| Noda, Naomi | 0 |
| Patki, Aniruddha | 14,432 |
| Prajapati, Nirav | 34,233 |
| Rassat, Bertrand | 65,000 |
| Rast, Tim | 121,891 |
| Saluja, Satnam | 0 |
| Samji, Mahesh | 0 |
| Schneider, Erik | 9,800 |
| Schroeder, Pierre | 0 |
| Sekine, Ryo | 10,000 |
| Shah, Jigisha | 0 |
| Sterr, Aaron | 41,379 |
| Stohrer Haifan | 0 |
| Strite, Daniel | 0 |
| Sweeney, Paul | 60,000 |
| Takeuchi, Yuki | 0 |
| Tepp, Michael | 3,429 |
| TeStrake, Peter | 134,662 |
| Turner, Marcus | 14,701 |
| Walker, Nathan | 51,396 |
| Welsh, Gavin | 20,449 |
| Yee, Henry | 0 |
| Ajustment | |
| **Total Employees** | **2,097,184** |

## Outsiders

| | |
|---|---:|
| Barrett, Paul | 100 |
| Chin, Michael | 1,000 |
| Estate of Diane Donaldson | 15,000 |
| Downey, Morgan | 5 |
| John Gross | 103,741 |
| Hollands, Christopher | 1,875 |
| Lyons, M. | 41,794 |
| Colwell, Jamie | 40,000 |
| Deveaux, Marc | 2,629 |
| Hobbs, Matthew | 70 |
| Martel, Jay | 1,361 |
| Roscoe, David | 23,041 |
| TCV | 1 |
| Young, Keith | 18,000 |
| Ajustement | |
| **Total Outsiders** | **248,617** |

**Exhibit #2**

# board advisory project

## TradingScreen

SIMPLIFYING GLOBAL MARKETS®

Sept. 2016

**EgonZehnder**

# Agenda

**1**   Board Candidate Summary

**2**   Board Candidate Profiles

**3**   Board Candidate Assessments

© 2016 Egon Zehnder    2

**Section 1**

© 2016 Egon Zehnder

# Board Candidate Summary

| Name | Position | Company | Location |
|---|---|---|---|
| Scott Freeman | Co-Founder and Managing Partner | Tachyon Capital Management | New York |
| Christian Katz | Chairman and Managing Partner<br>Board Member (Non-Executive) and Partner<br>Vice Chairman of the Board (Non-Executive) | MAINSTRAIT<br>XTP<br>SAXO BANK | Switzerland |
| Cliff Lewis | Former Executive Vice President and Head,<br>E-Exchange, Global Markets | State Street Corporation | Florida |

© 2016 Egon Zehnder

4

# Board Candidate Summary

## Fit to Thesis



© 2016 Egon Zehnder   5

**Section 2**

© 2016 Egon Zehnder

# Scott Freeman



Tachyon

| Location: | New York | |
|---|---|---|
| **Education:** | | |
| 1990 | JD, University of Michigan | |
| 1987 | BA, Political Science, University of Rochester | |
| **PROFESSIONAL EXPERIENCE** | | |
| 2008 – present | **TACHYON CAPITAL MANAGEMENT** Co-Founder, Managing Partner and Member, Quantitative Research Team | USA |
| 2004 – 2008 | **BANK OF AMERICA** Managing Director and Head, GFX and Rates ETS | USA |
| 1997 – 2004 | **CITIGROUP** | |
| 2000 – 2004 | Principal, eCommerce, Global Foreign Exchange | USA |
| 1997 – 2000 | Counsel, Capital Markets Legal Department | USA |
| 1994 – 1997 | **FEDERAL RESERVE BANK OF NEW YORK** Vice President and Counsel, Legal Department | USA |
| 1990 – 1994 | **STATE OF NEW YORK** Assistant District Attorney | USA |

**Comments:**
- Mr. Freeman is currently the Managing Partner and Co-Founder of Tachyon Capital Management, a high frequency proprietary trading company which uses proprietary technology and computer models to trade equities and futures.
- He previously was responsible for building and driving Bank of America's e-commerce initiative across its Global Foreign Exchange and Interest Rates businesses.



# Christian Katz

**SAXO BANK**

| Location: | Switzerland | |
|---|---|---|
| **Education:** | | |
| 1997 | PhD, Economics, University of St. Galen, Switzerland | |
| 1993 | MBA, University of St. Galen, Switzerland | |
| **PROFESSIONAL EXPERIENCE** | | |
| 2016 – present | **MAINSTRAIT** Chairman & Managing Partner | |
| 2016 – Present | **XTP** Board Member (Non-Executive) & Partner | |
| 2015 – Present | **SAXO Bank** Vice Chairman of the Board (Non-Executive) | Switzerland |
| 2009 – 2015 | **SIX GROUP** Chief Executive Officer, SIX Swiss Exchange and Member, Group Executive Board | Switzerland |
| 2006 – 2009 | **GOLDMAN SACHS** Managing Director, Equities | Switzerland |
| 1998 – 2006 | **J.P. MORGAN** | |
| 2005 – 2006 | Vice President and Head, Research Marketing, Derivatives, Equities and Bonds | UK |
| 1998 – 2005 | Vice President and Head Equities Sales, Switzerland | Switzerland |
| 1997 – 1998 | **LONDON FORFAITING COMPANY** Senior Analyst and Head, Asia Research | UK |
| 1993 – 1997 | **SBC WARBURG** Credit Analyst | Switzerland |

**Comments:**
- Mr. Katz has experience leading SIX Swiss Exchange, a European stock exchange, and prior to that oversaw x-stream INET, a leading trading platform, and SLS, a SIX Swiss partnership with Liquidnet offering clients buy-side block liquidity.
- He had early career roles at Goldman Sachs and JP Morgan in Equities, Derivatives and Bond Sales.

 **STATE STREET.**

# Cliff Lewis

| Location: | Florida |
|---|---|
| **Education:** | |
| 1976 | BA, Harvard University |

**PROFESSIONAL EXPERIENCE**

| | | |
|---|---|---|
| 2007 – 2013 | **STATE STREET CORPORATION**<br>Executive Vice President and Head, E-Exchange, Global Markets | USA |
| 2003 – 2007 | **CURRENEX**<br>*(acquired by State Street in 2007)*<br>Chairman and Chief Executive Officer | USA |
| TBD – 2000 | **CHICAGO BOARD OF TRADE**<br>Various Positions including Senior Vice President, Strategic Planning and Head, Electronic Trading | USA |
| TBD | **BRIDGE INFORMATION SYSTEMS**<br>Chief Operating Officer, BRIDGE eMarkets | USA |
| TBD | **KPMG INTERNATIONAL**<br>Consulting Partner | USA |
| 1978 – 1991 | **THE WORLD BANK GROUP**<br>Various Positions in Latin America Capital Markets | USA |

**Comments:**

- Mr. Lewis has more than 30 years of global financial experience in both the public and private sectors. He currently serves as non-executive Chairman of TradAir, a leading financial technology company, and as an independent director on the Board of Eurex Clearing and Eris Exchange.

- He led rapid growth as Chairman and Chief Executive Officer of Currenex, a foreign exchange marketplace. During his tenure in the role, he doubled revenue each year between 2005 and 2007 and later transacted the company to State Street Corporation for $564 million (28x-30x earnings).

© 2016 Egon Zehnder

8

**Section 3**

© 2016 Egon Zehnder

# Scott Freeman

## Career Highlights

**2006 – present** **Tradepad Capital Management** Co-Founder and Managing Partner

**2004 – 2008** **Bank of America** Managing Director and Head, GFX and Rates KTS

**2000 – 2004** **Citigroup** Principal, E-Commerce

## Summary

- Scott Freeman is Co-Founder of a quantitative high frequency proprietary trading company focused on macro-themes
- Previously, he was an institutional e-commerce executive with a focus on interest rates and foreign exchange
- Freeman is a tough, hardened, Wall Street executive who has also done significant strategic and venture investing when he worked on large platforms
- A pragmatist, very independent-minded, who focuses on value in all activities

## Background



**FinTech**

**Bank/Broker-Dealer/Trading**

**Broad Financial Services**

## Foundational Experience



**Governance Experience**

**Strategic**

**Transformation**

**Growth**

**VC | PE Experience**

**Product | Client Perspective**

## Fit to Thesis

## Conflict Tolerance



**Concerns | Limitations**

Does not shy from conflict issues, but might prefer a less complicated situation

- A broad set of experiences in bank/broker dealer space but less in the narrow FinTech space
- Knows how large bank/broker dealer platforms operate
- Can identify product opportunities for value delivery

- Has served on several small, private Boards: Atriax, EBS, BondAsia
- Briefly, served on the TradingScreen Board (when Bank of America made an early stage strategic investment)
- Significant transformational experience in dealing with institutional FX platforms at Citigroup and Bank of America
- Generally, a growth perspective; never worked as a 'steady state manager'
- Substantive VC | private equity experience from investments made on the Bank of America and Citigroup platforms
- Previously developed internal infrastructure to support bank product capabilities

Recommendation

- By nature, independent-minded, and not easily swayed by sentimental or personal relationships
- Open to serving on this Board if he can deliver value

© 2016 Egon Zehnder   10

# Christian Katz

## Career Highlights

**2009 – 2015**
SIX
Chief Executive Officer,
SIX Swiss Exchange

**2006 – 2009**
Goldman Sachs
Managing Director,
Equities

**1998 – 2006**
J.P. Morgan
Vice President

## Summary

- A dynamic executive with a focus on service and experience as well as a deep understanding of the drivers of financial markets
- Proven expertise growing SIX Swiss Exchange into a leading European stock exchange through challenging market environments
- Prior experience overseeing the technical redesign of SIX Swiss Exchange's system infrastructure and accelerating the introduction of leading trading platforms
- A tactical thinker with the intellectual capabilities and fire-power to define and implement strategy as demonstrated at Goldman Sachs



## Background

**FinTech**

- Experience leading SIX Swiss Exchange, a European stock exchange
- Prior oversight of x-stream INET, a leading trading platform, and SLS, a SIX Swiss partnership with Liquidnet offering clients buy-side block liquidity

**Bank/Broker-Dealer/Trading**

- Early career roles at Goldman Sachs and JP Morgan in Equities, Derivatives and Bond Sales

**Broad Financial Services**

## Foundational Experience

**Governance Experience**

- Vice Chairman of the Board of Saxo Bank, a private online trading and investment specialist

**Strategic**

- Implemented "P1 Strategy" at SIX to improve performance, drive culture change and to execute profitable M&A

**Transformation**

- Rebuilt the Swiss Equities and Derivatives Sales teams at Goldman Sachs and strengthened the bank's client-reach

**Growth**

- Grew JPMorgan's Institutional Cash Equity business from scratch in Switzerland

**VC | PE Experience**

**Product | Client Perspective**

- Strong customer focus, with experience developing user-friendly financial products and research

## Fit to Thesis

## Conflict Tolerance

**Concerns | Limitations**

- Board experience and knowledge of corporate governance in a European context

**Recommendation**

- Deep understanding of financial markets, including global exchanges and trading platforms
- Strategic mindset and the proven ability to turnaround organizations and deliver growth despite challenging market conditions

© 2016 Egon Zehnder    11

# Cliff Lewis

## Career Highlights

**2007 – 2015**   State Street Corporation
Executive Vice President and Head, E-Exchange

**2003 – 2007**   Currenex
Chairman and Chief Executive Officer

**TBD – 2000**   Chicago Board of Trade
Various Positions

## Summary



- Cliff Lewis is a highly experienced market infrastructure executive and vast relationship man; has worked for platform companies; he developed Currenex, a kind of competitor to TradingScreen, which was sold to State Street in 2007
- Meaningful governance experience that would be highly relevant in this context
- Highly strategic, transition and vast transformation experience that would be invaluable
- Pertinent knowledge of all/most of the players in the ecosystem, where TradingScreen operates
- A perfect fit, and includes who can serve and add a challenge as an independent director at a board level with high credibility

## Background

FinTech

Bank/Broker-Dealer/Trading

Broad Financial Services

## Foundational Experience

Governance Experience

Strategic

Transformation

Growth

VC | PE Experience

Product | Client Perspective

## Fit to Thesis

### Conflict Tolerance

Concerns | Limitations

- Some reticence to be involved if there is ongoing conflict between TCV and the Founder. Wants to help TradingScreen with its *future* rather than stirring the ashes of the past; may need consent from other boards where he is active

---

- A market infrastructure executive at origin who emerged into technology; a participant in the earliest stages of FinTech development, mostly on the non-client side
- Expansive knowledge of bank/broker-dealer infrastructure and related requirements
- Some exposure to broader financial services in the context of State Street

- Governance exposure in the context of VC | private equity activity which often involved issues of conflicts, duty and responsibility
- Highly strategic thinker in the context of business models, fulfilling unmet needs, monetizing capabilities and gaining strategic advantage
- Vast transformation experience in nearly every context of his career
- By situation, worked in fast growing and fast evolving environments
- Full perspective on early and late stage investing in FinTech companies; Back office more than a client perspective

Recommendation

- A close fit to thesis that could be a highly capable independent director, fully aware of the business and product models with more perspective than either the founder or the investors
- CEO who created a business and sold it with great success, similar to what TradingScreen wants to achieve

© 2016 Egon Zehnder   12